IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAWRENCE BACA,
LAWRENCE'S AUTOMOTIVE,

    Plaintiffs,

v.                                              CIV 11-0122 KBM/ACT

THE CITY OF ALBUQUERQUE,
VEHICLE POLLUTION MANAGEMENT
DIVISION, GLEN DENNIS, Division Manager,
Ms. MARTINEZ-LONER, V. LOUIS JARAMILLO,
Employees of VPMD,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion and Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint, filed February 9, 2011 (*Doc. 2*) ("Motion"). Pursuant to 28 U.S.C. § 636© and FED.R.CIV.P. 73(b), the parties consented to have me serve as the presiding judge and enter final judgment. *See Docs. 6, 8*. Having carefully reviewed the parties' submissions, the relevant authorities, and being otherwise fully advised, I find that the Defendant's Motion is well-taken and will be granted.

## BACKGROUND

Plaintiff Lawrence Baca operates a sole proprietorship, Lawrence's Automotive, located in the South Valley of Albuquerque, New Mexico. *See* Complaint (Doc. 1-1) at ¶ 2. Lawrence's Automotive provides emissions testing to its customers, pursuant to License # IR383, *see id.* at ¶ 13, issued by the City of Albuquerque as part of its Vehicle Pollution Management Program ("VPMP"), *see generally* NMAC 20.11.100.1 through .28. On or about May 27, 2010, a City

employee, Defendant Martinez-Loner, purported to conduct a "covert audit" of Lawrence's Automotive.  *See* Complaint at ¶ 14.  Allegedly, Defendant Martinez-Loner requested an emissions test at Lawrence's Automotive, and, rather than immediately performing the requested test, Plaintiff indicated her vehicle was likely to fail because the "check engine" light was illuminated.  *See id.* at ¶¶ 15-20.  Defendants alleged that Plaintiff's act of "mak[ing] it clear that the car would fail" before he completed an emissions test constituted prohibited "pre-testing."  Complaint at ¶ 18.  *See* NMAC 20.11.100.12(B)(2)(b) (defining pretesting as "having manual diagnostic emissions analysis or visual examination for tampering performed prior to the beginning of the inspection").  Plaintiff also allegedly failed to perform a "key on, key off" test, as required by the VPMP Procedures Manual.  *See id.* at ¶ 19.

On June 30, 2010, the City issued a Notice of Violation to Lawrence's Automotive for alleged "pre-testing" on May 27, 2010.  *See id.* at ¶ 23.  Also on that day, the City allegedly issued a Notice of Intent to Revoke Certification.  *See id.*  Plaintiff contends he timely filed a Request for Hearing.  *See id.* at ¶ 27.  At the August 30, 2010 hearing on the merits, Hearing Officer Stanley Harada held that the City failed to establish that any violation had occurred.  *See id.* at ¶ 28.  The City challenged the Hearing Officer's conclusion, filing a Motion for Reconsideration on September 24, 2010.  *See id.* at ¶ 30.  Ultimately, on November 3, 2010, the parties entered into a settlement agreement, pursuant to which Plaintiff was permitted to resume emissions testing effective November 16, 2010 in exchange for his promise to maintain a failure rate of approximately 9.75% of the vehicles tested by Lawrence's Automotive.  *See id.* at ¶ 32.

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 in New Mexico's Second Judicial District Court on January 5, 2011, alleging that:  Defendants unlawfully seized his

property in violation of the Fourth Amendment of the United States Constitution by "unreasonably interfer[ing] with Plaintiff's business and profits to which he was entitled" (Count I); Defendants lacked probable cause for their actions and therefore violated "fundamental notions of Due Process and fairness" (Count II); and committed "state constitutional and tort claims," including trespass (Count III), unlawful detainer (Count IV), and state constitutional violations concerning Plaintiff's alleged rights to be free from unreasonable searches and seizures, and his procedural and substantive due process rights (Count V). *See generally* Complaint. As a result of the Defendants' allegedly unlawful actions, Plaintiff claims he "suffered financial injury, harm to his business and reputation, mental distress and emotional suffering, lost profits . . ., loss of prospective business due to damaged reputation, and the costs of hiring an attorney to defend him during the aforementioned administrative action." Complaint at ¶ 33. Plaintiff also claims he was "prevented from earning a livelihood for three months." *Id.* at ¶ 34.

Plaintiff served Defendant City of Albuquerque on January 10, 2011, and on February 9, 2011, Defendants timely removed the case to federal court. *See* Notice of Removal, filed February 9, 2011 (*Doc. 1*). Federal jurisdiction exists in light of Plaintiff's claims under the United States Constitution. *See id.*; 28 U.S.C. § 1331.

Defendants filed the instant Motion in place of an Answer to the Complaint. With regard to Plaintiff's Fourth Amendment claim of unreasonable seizure, Defendants argue that a governmental entity's revocation of a license does not constitute a seizure within the meaning of the Fourth Amendment. *See* Motion at 5. Further, the Defendants contend that their actions were authorized by law – specifically, the regulatory scheme applicable to emissions testing. *Id.*

at 6.  As such, it is the Defendants' position that no abuse of process or violation of Plaintiff's due process rights occurred.  *Id.* at 9.  Finally, the Defendants argue that Plaintiff's state-law claims are not cognizable and should also be dismissed.  *Id.* at 13.

## LEGAL STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  Moreover, although the Court must assume the truth of the properly alleged, or "well-pleaded," facts in the Complaint, the Court has no obligation to accept conclusory allegations as true.  *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

Plaintiff argues that the Defendants' Motion should be treated as a summary judgment motion, and that the Court should only grant the Motion if there are no genuine disputes as to material facts.  *See* Motion at 2-3; FED.R.CIV.P. 56.  While the Court recognizes that a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56" where matters outside the pleadings are presented to and not excluded by the Court, *see* FED.R.CIV.P. 12(d), neither party submitted matters outside the pleadings in the present case.  Accordingly, the Court will decide Plaintiff's Motion under the Rule 12(b)(6) standard.

## ANALYSIS

**I.  Plaintiff Does Not Allege That the Defendants Failed to Follow Applicable Regulations.**

The New Mexico Administrative Code—adopted pursuant to the authority of the New Mexico Air Quality Control Act, NMSA 1978, §§ 74-2-4 and -5.C in order to comply with the Federal Clean Air Act, *see* NMAC 20.11.2003—provides for the certification of air care stations and inspectors.  *See* NMAC 20.11.100.18 and 20.11.100.21, respectively.  An "air care inspection station" is "a private business authorized by certificate in accordance with 20.11.100.18 NMAC to inspect motor vehicles and issue certificates of inspection."  NMAC 20.11.100.7(A).  Among the many regulations applicable to air care inspection stations, there exists a prohibition of "pre-testing."  *See* NMAC 20.11.100.12(B)(2)(b).

To maintain quality control, the Albuquerque/Bernalillo County Vehicle Pollution Management Program "shall conduct announced and unannounced quality assurance audits of each certified air care station."  NMAC 20.11.100.24(A).  "[A]fter reasonable investigation and showing of a violation of any provisions of this regulation," the program manager may take disciplinary action, "including monetary penalties and/or denial, suspension or revocation of certification to operate under the program as a certified air care station."  NMAC 20.11.100.26(A).  Suspension or revocation may be immediate "if the program manager determines that continued operation as an air care station, fleet air care station, air care inspector, or air care technician would jeopardize the public health, safety and welfare; violate the VPMP procedures manual or this part; or compromise the program."  NMAC 20.11.100.26(B).  The program manager is required to inform the station owner of any charges before suspending or revoking a certification, and the owner has 15 days after receipt of a notice of intent to suspend

or revoke certification to request a hearing. NMAC 20.11.100.26©. When a hearing is requested, the program manager must set a hearing no more than 60 days from the date the request for hearing was received. NMAC 20.11.100.26(D).

In this case, Plaintiff claims he received a Notice of Violation and a Notice of Intent to Revoke Certification on June 30, 2010. *See* Complaint at ¶ 23. On August 16, 2010, the VPMD acted on its Notice of Intent and revoked Plaintiff's license. *See id.* at ¶ 24. Plaintiff claims he filed a timely request for hearing, which was held August 30, 2010. *See id.* at ¶¶ 27-28. Plaintiff does not allege that the Defendants failed to follow the proscribed administrative procedures in this case. *See generally Complaint*. Rather, Plaintiff admits "it is undisputed that the inspection was carried out under color of law and a valid regulatory scheme." Response in Opposition to Defendants' Motion to Dismiss at 6, filed February 21, 2011 (*Doc. 5*) ("Response"). *See also* Response at 8 ("Plaintiffs do not contend that a warrantless undercover audit may be lawfully [sic] conducted, only that the audit actually conducted ultimately proved unreasonable.").

Although Plaintiff did not plead these facts in his Complaint, he asserts in response to the Defendant's Motion that "Defendant Martinez-Loner's testimony was ultimately adjudicated unreliable and unsubstantiated, once a hearing on the merits occurred" and that Ms. Martinez-Loner "ultimately cited unsubstantiated infractions." Response at 5, 7. Upon review of Plaintiff's Response, it therefore appears that Plaintiff's claims against the Defendants may rest upon Ms. Martinez-Loner's alleged lack of proper training. Even if the Court were to consider the unpled additional facts concerning the hearing officer's findings as to Ms. Martinez-Loner, these facts do not advance Plaintiff's claims in light of the applicable federal regulations, which provide that auditors' "training and knowledge requirements . . . may be waived for temporary

auditors engaged solely for the purpose of conducting covert vehicle runs." 40 C.F.R. § 51.363(d)(3).

**II. Plaintiff Fails to State A Fourth Amendment Claim for Unreasonable Seizure**

Under the heading "Unreasonable Seizure," Plaintiff contends that Defendants "unreasonably interfered with Plaintiff's business and profits to which he was entitled, made loans against, and generally had an expectation interest in receiving." Complaint at ¶ 36 (Doc. 1-1). Plaintiff also asserts that "[t]he seizure of the property through the use of an administrative proceeding was unreasonable due the [sic] lack of probable cause or substantial evidence, and seeks to bypass proper judicial authority for the issuing of search warrants." *Id.* at ¶ 37.

> The Fourth Amendment to the United States Constitution provides:
>
>> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. Amend. IV. A "seizure" of property, within the meaning of the Fourth Amendment, "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The Supreme Court has held that the Fourth Amendment generally applies to administrative inspections of private commercial property, however,

> [t]he interest of the owner of commercial property is not one in being free from any inspections. Congress has broad authority to regulate commercial enterprises engaged in or affecting interstate commerce, and an inspection program may in some cases be a necessary component of federal regulation. Rather, the Fourth

7

> Amendment protects the interest of the owner of the property in being free from *unreasonable* intrusions onto his property by agents of the government. Inspections of commercial property may be unreasonable if they are not authorized by law or are unnecessary for the furtherance of federal interests.

*Donovan v. Dewey*, 452 U.S. 594, 599 (1981). As the Defendants point out, there is also authority from the New Mexico Supreme Court that in the limited context of administrative license revocation hearings, "[t]he constitutional defenses of unreasonable search and seizure and self incrimination are not available". *Kearns v. Aragon*, 65 N.M. 119, 333 P.2d 607, 610 (1959) (citing *Camden County Beverage Co. v. Blair*, 46 F.2d 648 (D.C.N.J. 1930)).

### A.  Plaintiff Has Not Pled Facts From Which the Court May Find That Defendants Interfered with His Property.

Initially, to the extent that the seized property to which Plaintiff intends to refer is his license or certificate to operate an air care station, the Court finds that Plaintiff lacks a possessory interest in the license or certificate. The Environmental Protection Agency's regulations under the Clean Air Act provide that "[l]icenses or certificates shall not be considered a legal right but rather a privilege bestowed by the program conditional upon adherence to program requirements." 40 C.F.R. § 51.367(b)(4). As such, to the extent that his claim is based on the seizure of his license or certificate to operate an air care station, Plaintiff fails to state a Fourth Amendment claim for which relief may be granted.

Plaintiff's Complaint is less than clear in terms of identifying the property interest that he claims was violated in this case. Plaintiff contends, for instance, that his damages include "harm to his business and reputation," "lost profits," "loss of prospective business," and "being prevented from earning a livelihood for three months." *See* Complaint at ¶¶ 33-34. In Count I,

seeking damages for unreasonable seizure, Plaintiff similarly refers to Defendants' alleged interference "with Plaintiff's business and profits to which he was entitled, made loans against, and generally had an expectation interest in receiving." *Id.* at ¶ 36. Plaintiff's Complaint contains no factual allegations, however, from which the Court can conclude that the Defendants seized any property other than the license issued to Plaintiff to operate an air care station. Lacking a protected property interest in any items that were allegedly seized, Plaintiff cannot state a plausible claim of unreasonable seizure under the Fourth Amendment.

### B.     Defendants' Inspection of Plaintiff's Commercial Property Was Reasonable.

Even assuming that Plaintiff has asserted a valid property interest, the Court nonetheless finds that there is no plausible claim that the inspection and license suspension in this case were unreasonable or in violation of the Fourth Amendment. The Supreme Court has found that "[t]he interest of the owner of commercial property is not one in being free from any inspections." *Donovan*, 452 U.S. at 599. The applicable regulations permit and indeed require inspections. *See* NMAC 20.11.100.24(A) (providing that "[t]he program shall conduct announced and unannounced quality assurance audits of each certified *air care* station as ordered by the program manager"). Likewise, the VPMD "is authorized after reasonable investigation and showing of a violation of any provisions of this regulation to take disciplinary actions including monetary penalties and/or denial, suspension or revocation of certification to operate under the program as a certified *air care* station." NMAC 20.11.100.26(A). Further, Plaintiff specifically admits "it is undisputed that the inspection was carried out under color of law and a valid regulatory scheme." Response at 6. Plaintiff, moreover, has not pled facts from which the Court might conclude that the inspection in this case was unnecessary to further the federal

interest in clean air. As such, the Court cannot conclude either that Defendants' inspection and seizure of the license was unauthorized by law or unnecessary to further the federal interest. Plaintiff's claim of unreasonable seizure under the Fourth Amendment therefore fails to state a claim from which relief may be granted, and the Court will dismiss Count I.

### III. The Complaint Fails to State a Constitutional Claim for Malicious Abuse of Process.

Count II of Plaintiff's Complaint alleges "prosecution without probable cause and abuse of process." *See* Complaint at 6. Specifically, Plaintiff claims that the suspension of his license for emissions testing "was irregular due to the lack of probable cause and failure to follow fundamental notions of Due Process and fairness." *Id.* at ¶ 45. The Court interprets this claim as one for malicious abuse of process in light of Plaintiff's reference to a lack of probable cause.

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Novitsky*, 491 F.3d at 1258.

### A. Plaintiff Has Not Pled Facts From Which the Court May Find That There is a Plausible Deprivation of a Constitutional Right.

Before reaching the elements of a malicious prosecution claim, the "starting point" of the Court's analysis is "the ultimate question [] whether plaintiff has proven the deprivation of a constitutional right." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). As noted in the previous section concerning Plaintiff's Fourth Amendment claim for unreasonable seizure, Plaintiff cannot claim deprivation of a constitutional right based upon the suspension of his license to operate an air care station for emissions testing. The Environmental Protection

Agency's regulations clearly characterize this license as a privilege and not a legal right.  40 C.F.R. § 51.367(b)(4).

To the extent that Plaintiff claims Defendants deprived him of property rights in Lawrence's Automotive, the Court recognizes that, generally speaking, "[p]roperty rights are protected by the due process clause of the Fourteenth Amendment."  *See Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of County of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011).  However, as the Tenth Circuit recognized in *Jordan-Arapahoe*, "the bundle of sticks of land ownership is overlain with myriad competing land use, zoning, *and environmental regulations*."  *Id.* (emphasis added).  Thus, "the right to use property is fully protected by the Due Process Clauses of the federal and state constitutions, but is subject to a proper exercise of the police power."  *Id.* (quoting *Eason v. Bd. of County Comm'rs*, 70 P.3d 600, 605 (Colo. App. 2003).).  In this case, Plaintiff admits that "the inspection was carried out under color of law and a valid regulatory scheme."  *See* Response at 6 (Doc. 5).  Thus, it does not appear that Plaintiff has alleged a recognized property interest; consequently, Count II fails to state a claim for which relief may be granted.

> **B.**     **Plaintiff Has Not Pled Facts Sufficient to Support a Plausible Claim that the Original Action Terminated in His Favor.**

Even assuming that Plaintiff has alleged a protected property interest, the Court nonetheless finds that Plaintiff has not pled a plausible claim for which relief may be granted.  To prevail on his malicious prosecution claim, Plaintiff must ultimately prove that the prior proceedings terminated in his favor.  *See Wilkins v. DeReyes*, 528 F.3d 790, 803 (10th Cir. 2008).  An abandonment of proceedings "is ordinarily insufficient to constitute a favorable termination."  *Id.* at 802.  A settlement of claims also does not constitute a favorable termination.

*See, e.g., Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 832 (3rd Cir. 1995) (decided under Pennsylvania law).

In this case, Plaintiff requested a hearing on the merits, where "Hearing Officer [Stanley] Harada found that 'there is no just cause for the continued suspension of [Plaintiff's] ability to conduct emissions testing, *pending further legal proceedings*.'"  *See* Complaint at ¶ 29 (emphasis added).  Plaintiff further notes that the hearing officer assigned to his case "allowed the parties to submit additional Findings of Fact and Conclusions of law by October 1, 2010." *Id.*  Before the parties submissions were due, Defendants filed a Motion for Reconsideration of the hearing officer's recommendation.  *Id.* at ¶ 30.  Thereafter, the parties entered into a Settlement Agreement.  *Id.* at ¶ 32.

The Court finds that Plaintiff's settlement does not constitute a favorable termination of the original action.  Absent a plausible claim of favorable termination, which does not exist in this case, Plaintiff cannot sustain a claim for malicious abuse of process.  The Court will therefore dismiss Count II.

## IV.  Defendants Are Not Liable for the Common-Law Torts of Trespass (Count III) and Unlawful Detainer (Count IV) Pursuant to the Tort Claims Act.

Governmental entities and public employees are generally immune from liability for any tort as provided by the New Mexico Tort Claims Act.  NMSA 1978 § 41-4-4(A) (1976). Plaintiff contends that Tort Claims Act immunity is waived in this case pursuant to NMSA 1978, § 41-4-12, which provides that:

> [t]he immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage, resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation

> of property rights or deprivation of any rights, privileges or
> immunities secured by the constitution and laws of the United
> States or New Mexico when caused by law enforcement officers
> while acting within the scope of their duties.

NMSA 1978, § 41-4-12. A "law enforcement officer," as that term is used in the Tort Claims Act, includes governmental employees "whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." NMSA 1978, § 41-4-3(D). This definition is strictly construed by New Mexico courts. *See Coyazo v. State*, 120 N.M. 47, 51 (Ct. App. 1995).

The New Mexico Court of Appeals has held that the Director of the Motor Vehicle Division ("MVD") and other officers designated by him are not a law enforcement officers under the Tort Claims Act. *See Dunn v. State ex rel. Tax and Rev. Dep't*, 116 N.M. 1, 4, 859 P.2d 469, 472 (Ct. App. 1993). Based on the fact that the MVD officials "handled principally administrative matters" as opposed to making arrests, the court in *Dunn* found no basis upon which to conclude that MVD officials were "law enforcement officers" under the Tort Claims Act. Likewise, in the present case, Plaintiff has not pled any facts to suggest that the individual defendants in this case do anything other than handle the administrative matters that are at issue. The Defendants therefore should not be treated differently than the MVD officers in *Dunn*. Since Plaintiff has not alleged an applicable waiver of Tort Claims Act immunity, Counts III and IV must be dismissed.

**V. Plaintiff Has Not Pled A Plausible Due Process Claim Under the New Mexico Constitution.**

"[W]hen there is no New Mexico precedent interpreting a provision of the New Mexico Constitution distinctly from its federal counterpart, the party desiring such a distinction must

assert to the trial court that it should be interpreted more expansively and provide reasons therefore." *Camuglia v. City of Albuquerque*, 375 F. Supp.2d 1299, 1306 (D.N.M. 2005).  In this case, Plaintiff does not allege a more expansive interpretation of due process than that provided under federal law.  The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. Amend. XIV.  There are two steps to a court's consideration of a claim for violation of procedural due process: (1) is there a liberty or property interest with which the state has interfered? and (2) given the interest at stake, what procedures does the constitution require?  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

> **A.     Plaintiff Does Not Allege a Protected Constitutional Interest.**

Plaintiff's procedural due process claim appears to be based solely upon his interest in the "previously granted license/entitlement."  *See* Complaint at ¶ 26 ("It is a fundamental doctrine of administrative law that, before a deprivation of a fundamental right or previously granted license/entitlement occurs, notions of fairness and Due Process require a pre-deprivation hearing.").  Because, as the Court has previously noted, Plaintiff's license to operate an air care station is a privilege as opposed to a legal right, *see* 40 C.F.R. § 51.367(b)(4), the Court finds that Plaintiff has not pled a protected liberty or property interest with which the state has interfered.

> **B.     Even Assuming a Valid Protected Interest, Plaintiff Received All Process That Was Legally Due.**

Assuming *arguendo* that Plaintiff has asserted a valid protected interest, the Court will proceed to determine whether Plaintiff received the required procedures.  "The fundamental requisite of due process is the opportunity to be heard."  *Goss v. Lopez*, 419 U.S. 565, 579 (1975)

(internal quotation marks omitted). "[O]rdinarily one who has a protected property interest is entitled to some sort of hearing before the government acts to impair that interest, although the hearing need not necessarily provide all, or even most, of the protections afforded by a trial." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2008). In matters concerning public health and safety, however, the government is permitted to act quickly; therefore, recognizing that "[q]uick action may turn out to be wrongful action," the Supreme Court has held that due process requires only a post-deprivation hearing in such cases. *Id.*

The present case is clearly one concerning public health and safety. Moreover, there is no dispute in the present case that Plaintiff received a post-deprivation hearing, as provided by the applicable regulations. According to Plaintiff's Complaint, the Defendants revoked his license on August 16, 2010. *See* Complaint at ¶ 24. Plaintiff, having timely requested a hearing, was provided with a post-deprivation hearing on the merits on August 30, 2010. *Id.* at ¶¶ 27-28. Having admitted these facts, Plaintiff cannot state a plausible claim for violation of procedural due process.

## C. Plaintiff Has Not Shown A Plausible Claim for Violation of the Substantive Due Process Clause.

"'An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause.' But the arbitrariness must be extreme." *Camuglia*, 448 F.3d at 1222 (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999)). The facts alleged by Plaintiff in this case simply do not meet this standard of extremity. The Court cannot find that the Defendants' actions, as alleged in Plaintiff's Complaint, "shock the conscience." *See id.* (holding that "[t]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience-shocking" (citation omitted)).

15

Wherefore,

**IT IS HEREBY ORDERED** that Defendants' Motion and Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint, filed February 9, 2011 (*Doc. 2*) is **granted**, and Plaintiff's Complaint is **dismissed with prejudice.** Pursuant to Fed.R.Civ.P. 58, judgment will enter in accordance with this opinion.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent